## NEW YORK CENTRAL RD CO v QUILLAN

Ohio Appeals, 7th Dist, Jefferson Co

No 818. Decided June 3, 1933

Smith, Francis & Irvine, Steubenville, for plaintiff in error.

Mansfield & Merryman, Steubenville, and J. J. Griesinger, Jr., for defendant in error.

## OPINION

By ROBERTS, J.

Perhaps it should be suggested that there is perhaps a discrepancy in the testimony of Mr. Nosset, the photographer, who took some of these pictures, with regard to certain points. It is evident, however, from a consideration of the testimony and examination of the exhibits, that he was mistaken in giving one distance as fifteen feet. He said that he did not make any memoranda of the measurements himself, and evidently Mr. Watson's testimony upon this proposition is correct.

The fireman on the locomotive testified that the decedent did not look at the approaching train. The jury returned an answer to the interrogatory stating that he did look. Presumably, whether he looked or not is not particularly important in determining the issue presented in this case. Other than the testimony of the fireman there is no testimony as to whether the decedent looked. Both the decedent and his companion lost their lives in the accident.

It appears from the evidence that not only did the truck come in contact with the locomotive, as found by the jury, but that the truck, with its front end, struck the locomotive about thirty feet back from the front end thereof, the truck striking a journal box and denting it and leaving the license plate, as testified to in the evidence, attached to the locomotive at this point.

The evidence indicates that the train was traveling at about thirty-five miles an hour, and the truck at about the same speed. This would further indicate that at about the time the pilot of the locomotive was entering upon the intersection of the railroad and the highway, the truck was about thirty feet or a little more distant from the locomotive. Whether or not the driver of the truck saw the locomotive, it seems to be quite evident from the evidence that the direction of the truck was not changed or deviated, but that it came directly straight forward and struck head-on into the locomotive, so that if the driver thereof did see the locomotive, it is not apparent that any effort was made to change the course of the truck or avoid the accident otherwise than the possible effort to reduce its speed.

It is claimed by the plaintiff in error that the judgment in this case should be reversed upon the grounds and for the reason that the plaintiff's decedent in the operation of his truck was guilty of contributory negligence to such an extent as would justify or require a reversal of the judgment in this case.

This was not, so far as the evidence discloses, a known railroad crossing, so far as this decedent was concerned. It is not suggested in the testimony that he was familiar or knew of this crossing; there is some testimony tending to indicate that perhaps he did not know of the existence of the railroad at this point, so that established rules with regard to the duty of a traveler approaching a known railroad crossing presumably should not be applied.

However, it was the duty of the driver to exercise reasonable care as he was with his truck descending this hill, when he was some 230 feet from the railroad crossing; whether or not he could see the track at that distance, there was plainly visible the post and cross arms which have been described, which would indicate to anyone the presence of a railroad crossing at that point. There was also lettering upon the sign indicating danger, and there is some dispute as to the precise distance in which this lettering could be read. However, the existence and nature of the sign itself would be indicative to a traveler of the existence of a railroad. So that the exercise of ordinary caution would have indicated the propriety or necessity of lessening the speed of this motor vehicle so that it could be stopped before going upon the railroad track, the location of which was indicated by the sign.

As has been further stated, approaching within thirty or thirty-one feet of the track there was an uninterrupted view of the railroad track for more than a quarter of a mile. At that point certainly the railroad track was in close proximity and was or should have been observed in the exercise of ordinary care, and with knowledge, then, of the existence and location of the railroad track, ordinary prudence would have suggested a looking up and down the track to determine whether there were any trains approaching within dangerous proximity. A looking to the right or to the north would, under the circumstances, certainly have indicated the presence of the approach of the train.

It seems clear that if the driver of the truck had given heed either to the railroad sign or to the railroad track to the right, the approach of this train would have been discovered. If, as the fireman said, the

operator of the car was not looking at the engine or at the train, such failure to look would be negligence. If he did look, he must have seen it, and if no effort was then made to prevent the collision, that would be negligence.

At the rate in which this truck was going, it was reasonable to assume that in a distance of thirty feet or more, that the direction of the truck could have been changed, and it perhaps turned into the ditch or against the bank and some accident occur less dangerous than that of coliding with a moving railroad engine.

We think that the practically undisputed evidence in this case discloses contributory negligence on the part of plaintiff's decedent in this action.

It is claimed, however, that this court is already on record in this case in the previous opinion when the case was reversed in manner as has been suggested, and I was the author of that opinion also, in that it is said:

"Under these circumstances is it reasonably conceivable that a truck being operated with reasonable care might come down that hill, the driver suddenly discover or become aware of a locomotive and train going over the crossing at that point, and be unable to stop the truck before running into and colliding with the side of the locomotive?"

In connection with that language used, it should be remembered that the former case was submitted, not upon the evidence, but upon the pleadings. That is the law so far as considering the involved question with regard to interrogatories, and it is so said in the opinion that the court had no right to and did not consider the evidence in the case, but only the allegations of the pleading. And in the petition which had to be considered at that time it was alleged that the defendant carelessly and negligently failed to erect east of said crossing any sign or warning whatever for the benefit of persons unacquainted with the presence and existence of said crossing, as was the plaintiff's decedent.

It is now ascertained, as has been before stated, that that allegation was incorrect, and that there was a sign observable for a distance of over two hundred feet indicating the presence of the railroad crossing.

In the case of The D. T. & I. R. R. Co. v Rohrs, 114 Oh St, 493, paragraph three of the syllabus reads:

"A driver of a vehicle upon a highway cannot recover damages for an injury received in a collision at a steam railroad crossing, even though he testifies that he looked and listened and neither saw nor heard anything approaching on the railroad track before going upon the crossing, when the only conclusion that can reasonably be reached upon the evidence is that there is no doubt that had he looked he must have seen the danger, that was immediately at hand, in time to avoid injury."

In the case of Pennsylvania Railroad Company v Rusynik, 117 Oh St, 530, it is said:

"When a traveler upon a public highway approaches a steam railway which intersects at grade the highway, with one or more tracks, with an intention of crossing over, it is the duty of such traveler, before going upon the railway, to look both ways and listen for the approach of trains; and such looking and listening must be at such time and place and in such manner as will be effective to accomplish the ends designed thereby."

There has been cited in this case and somewhat contradictory to other decisions, two of which have been just referred to, the case of C. C. C. & St. L. R. R. Co. v Ruhl, Admx., 123 Oh St, page 582. This decision is not wholly in accord, as suggested, with former and the general trend of Supreme Court decisions. We understand, however, that it is applicable to the conditions and circumstances and environments involved in that accident, which was within a municipality and involving conditions other than those occurring in the open country where speed is practically unlimited so far as persons not upon the train are concerned.

In the case of Machalec., Admr. v Hutchison, 123 Oh St, 494, it is said:

"Where it appears that, at the close of the plaintiff's testimony, or at the close of the entire evidence, there is no reasonable presumption other than that plaintiff's negligence proximately contributed to his injury, it becomes the duty of the court to sustain motions in defendant's favor for a directed verdict, unless the defendant's conduct amounts to wantonness or wilfulness."

Applying the law, as we understand it, to the facts in the case as shown by the decided weight of the evidence or as uncontradicted, it is the conclusion reached that the decedent of the plaintiff in this action was guilty of contributory negligence and that she, therefore, is not entitled to recover.

It is claimed, further, that there was prejudicial error in the instructions of the court to the jury after the jury had retired for its deliberation. The jury was recalled and the following was said to the jury by the trial court:

"I have only had one disagreement in the last three or four years, and that was a jury composed of all twelve men; you ought to have respect for these three ladies and agree. I am going to let you spend another half an hour or so up there. Try to get together. You know, it costs money to try law suits. And keep on good terms with each other. Do not get mad * * * I am going to let you go back up and spend another half an hour or so and try and get together. It only requires nine to reach a verdict; and if possible, come in with some sort of a verdict."

If this case were not to be otherwise reversed, as has been already suggested, this instruction or statement of the court to the jury would be cause for serious consideration as to whether or not it was reversible error. However, in view of the fact that the case is otherwise reversed, we simply express our disapproval.

It is also said that the court committed error in instructing the jury as to the estimation of damages in the case in the following language:

"In arriving at the amount of damages the jury should consider the age, health, earning capacity and expectancy of life of the deceased, his mode of treatment of his wife, and so forth."

Of course there was no evidence in the case relating to the manner in which the decedent treated his wife, and perhaps would not have been received if offered. This would not have been a proper subject for consideration by the jury; whether it did or not we do not know. We also disapprove of this instruction.

But, for the reasons already given, the case is reversed and on the ground of contributory negligence, and final judgment entered.

Judgment reversed.

FARR and POLLOCK, JJ, concur in the judgment.